IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 5, 2015

## ANESHA MCKINNON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 12-02824    John W. Campbell, Judge**

---

**No. W2014-01514-CCA-R3-PC  -  Filed September 4, 2015**

---

The Petitioner, Anesha McKinnon, filed a petition for post-conviction relief in the Shelby County Criminal Court, alleging that her trial counsel was ineffective and that her guilty plea was not knowingly and voluntarily entered.  The post-conviction court denied the petition, and the Petitioner appeals.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER AND ROGER A. PAGE, JJ., joined.

J. Walker Pritchard (on appeal) and Ebony N. Dawkins (at trial), Memphis, Tennessee, for the appellant, Anesha McKinnon.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Lessie Rainey, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On June 6, 2013, the Petitioner pled guilty to aggravated robbery, a Class B felony.  The plea agreement provided that the Petitioner would receive the minimum sentence of eight years and that she would serve one hundred percent of the sentence.  At the plea hearing, the State recited the following factual basis for the plea:

Had the matter gone to trial, the State's proof would be that on January 8th of 2012 at approximately 5 p.m. officers with the Memphis Police Department responded to a call at 4097 Saint Pierre located in the Grahamwood Point Apartments. When the Memphis police officers arrived on the scene the victim, Lanetria Redmond, reported that she came to the Grahamwood Point Apartments to meet a male known to her as South Memphis.

Redmond reported that when she arrived, a male came to her vehicle and they talked for several minutes and then he returned to his apartment. Redmond reported two females approached her and demanded money at gunpoint. One of the females got into Redmond's vehicle and took her wallet and two cell phones while the other female held Redmond at gunpoint. During the course of the investigation Brandon Jones was developed as a suspect and Redmond identified him in a photographic [lineup] as South Memphis, the person responsible for setting up the robbery.

On January 11th, 2012, Jones was arrested and he did waive his Miranda Rights and give a statement to being present during the planning of the robbery and receiving proceeds. Through further investigation [the Petitioner] was developed as a suspect and Redmond later identified her in a photographic lineup as one of the females that robbed her.

On January 12th, 2012 [the Petitioner] was arrested. She was brought to 201. She waived her Miranda Rights and confessed to being present during the robbery – during the planning of the robbery and receiving proceeds from the robbery but denied participation.

The Petitioner stipulated to the facts as recited by the State. She stated that she had reviewed the guilty plea with trial counsel, that he had answered her questions regarding the plea, that he had done everything she asked, and that she was satisfied with his representation. She futher stated that she signed the plea form, that she understood the rights she was waiving by pleading guilty, and that no one had threatened her into pleading guilty. The Petitioner said that she was entering the guilty plea "freely and voluntarily" and that she had no questions about what she was doing.

Thereafter, the Petitioner filed a timely petition for post-conviction relief, alleging that trial counsel was ineffective and that her guilty plea was not knowingly and voluntarily entered.

At the post-conviction hearing, the Petitioner testified that originally she was represented by the public defender's office but that her family later hired trial counsel. She said that she and trial counsel met and discussed the facts of the case, including the discovery materials. She told trial counsel that she had been diagnosed with the following mental health problems: "[b]ipolar [disorder], anxieties, mania and postpartum [depression], and . . . paranoi[d schizophrenia]." However, trial counsel never sent the Petitioner for a mental evaluation.

The Petitioner said that she had taken Tegretol, which helped with her mania and bipolar depression, but that she stopped taking the medication in September 2012 because she was pregnant with twins. She resumed taking the medication in February 2013 and continued until April 2013 when she again became pregnant. She gave birth in January 2014 and resumed taking her medication six weeks later. When she was off her medication, she could not make decisions on her own; she had mood swings, memory loss, and anxiety attacks; and she "griev[ed] the loss of [her] children."

The Petitioner acknowledged that prior to entering the guilty plea, she was not in custody and that she missed a court date on January 17, 2013. She explained that she told trial counsel that she was on "bed rest" after having surgery and assumed that he would inform the court that she could not attend court that day. She said that after she was off bed rest, she called trial counsel about the missed court date and learned that a warrant had been issued for her arrest.

The Petitioner said that she was arrested in June 2013, and a day or two later, she was taken into the courtroom. She did not recall speaking with trial counsel between January and June. She pled guilty one or two days after she was taken into custody. She said that she did not speak with trial counsel until they were in court. The Petitioner said that from prior conversations with trial counsel, she thought she might be allowed to plead guilty to a lesser offense with a potential sentence of two years. Instead, counsel told her that the State had offered a sentence of eight years at eighty-five percent.[1] The Petitioner told counsel the offer was not what they had discussed, and counsel offered to speak with the State and attempt to negotiate a lesser sentence. However, when he returned, he told the Petitioner that if she did not plead guilty that day, she would be

---

[1] According to Tennessee Code Annotated section 40-35-501(i), an offender convicted of aggravated robbery "shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law, shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%)."

- 3 -

charged with felony failure to appear, which carried a consecutive sentence of three years.

The Petitioner said that when she heard the offer, she panicked because she had expected counsel to "talk it out with me or explain it a little better . . . ." The Petitioner said that she was innocent, "not educated," and had "no diploma." She was depending on trial counsel to help her but believed he did not want to fight for her; therefore, she felt that she was in a "no win" situation. The Petitioner said that before she signed the plea agreement, trial counsel went over the paperwork, which included "the 8/85, the time that I had to sign, nothing new." She said that she was not having a manic episode when she signed the plea form.

The Petitioner acknowledged that she said "yes to a lot of stuff" at the guilty plea hearing but claimed that she "blanked out" and was thinking about the three children she had lost. She conceded that trial counsel informed her that she did not have to accept the State's offer and could proceed to trial. She felt, however, that she "had nobody to fight with me."

On cross-examination, the Petitioner said that she had been taking Tegretol since she gave birth in February 2014. Previously, she had taken "Lipium," which did not work very well.

The Petitioner said that after her arrest in January 2012, she was represented by a public defender until around October 30, 2012, when her family hired trial counsel. She said that she was out on bond at the time but that she never went to counsel's office. She said that she only met with him on court dates and that he never visited her in jail. She recalled meeting with him twice in court. During the first meeting, they discussed trying to negotiate with the State for a lesser offense and a lesser sentence. Her next meeting with trial counsel was on the day she pled guilty.

The Petitioner stated that when she spoke with trial counsel about her mental health issues, he told her that "they not trying to hear none of that." She did not ask trial counsel if she could have a trial because she was not thinking about it. She said that she responded affirmatively to the trial court's questions because she was not on her medication and was panicking. She said that originally trial counsel told her the sentence might be eight years at thirty percent. She acknowledged, however, that trial counsel told her before she signed the agreement that the State's offer was an eight-year sentence at eighty-five percent.

Trial counsel testified that he was hired to represent the Petitioner. He said they never met at his office because the Petitioner "had a transportation issue," and they "kind of just agreed to meet at court." He recalled that the Petitioner's family was very

involved in her case. He met with the Petitioner twice before she failed to appear in court in January. On November 30, he met with the Petitioner, her mother, and a friend and discussed the discovery materials at length. The Petitioner was confused about why her co-conspirators had not been charged, and they talked about criminal responsibility. The Petitioner had given a statement to the police "limit[ing] her involvement," but he explained to her that "legally that distinction wasn't going to matter." They also discussed the State's plea offer of eight years at eighty-five percent. Trial counsel believed it was "a good offer" because the Petitioner had been identified by the co-conspirators and had made a statement implicating herself. Additionally, he was concerned because the State had photographs of a baby in the backseat of the victim's car, and he did not "want it to turn into a second count of aggravated robbery or at least aggravated assault against, you know, this child in the backseat." Trial counsel tried to get the State to agree to a Class C felony, but the State would not agree to an offense lower than a Class B felony. The Petitioner was scheduled to enter a guilty plea that day, but she asked that the case be reset so she could be home for her daughter's birthday.

Trial counsel said that when the Petitioner missed her court date on January 7, he thought the State might rescind the offer. He said that the Petitioner never told him she was unable to come to court because of surgery. When trial counsel spoke with the State in June, he asked for "alternative probation" because the Petitioner was pregnant again. The State was upset because the Petitioner had failed to appear at her last court date and offered a nine-year sentence. The State also informed counsel that if the Petitioner did not plead guilty, she would be charged for failure to appear and, if convicted, receive a mandatory consecutive sentence. After extensive negotiations, the State agreed to reinstitute the offer of eight years at eighty-five percent. He acknowledged that the plea process "was probably more rushed than [he] would have liked" but stated that "it was sort of if she wants to do this today she can do it, [the State did not] want to deal with this anymore."

Trial counsel said that when he relayed the offer to the Petitioner, he explained that the State "had us over a barrel." The Petitioner was upset because she thought the State would be more lenient because of her pregnancy. The Petitioner wanted more time to think, but trial counsel advised her that if she took more time, the eight-year offer would be rescinded.

Trial counsel said that initially the Petitioner wanted to take the case to trial. However, after he explained the law of criminal responsibility, she began losing interest in a trial.

Trial counsel did not recall the Petitioner's informing him that she had mental health issues. He asserted that if he had known of any mental issues, he would have arranged for an evaluation. He stated that he never saw anything in the Petitioner's

- 5 -

behavior that gave him concern and that he believed the Petitioner "understood what was going on."

On cross-examination, trial counsel said that he met with the Petitioner two or three times prior to the guilty plea. On the morning of the plea, he kept the Petitioner updated on the negotiations and discussed the "issues with the case." Counsel recalled that he and the Petitioner had extensive discussions regarding her case prior to that day "so it wasn't like the first time we're talking about any of this." They talked for thirty to forty-five minutes before she pled guilty. Trial counsel acknowledged that he did not speak with the Petitioner between January and June, but he asserted that he did not know where she was or how to get in touch with her during that time.

The post-conviction court found that counsel was not ineffective and that the Petitioner knowingly and voluntarily pled guilty to avoid facing an additional conviction and sentence. The court observed that the Petitioner presented no mental health evidence, outside of her own testimony, to demonstrate that she had any mental disease or defect that affected her competency. Moreover, trial counsel never saw anything that suggested competency issues. The court further found that the Petitioner was responsible for failing to appear and was in danger of incurring another conviction and sentence. Accordingly, the post-conviction court denied the petition.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, [she] would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty plea was knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of [her] familiarity with criminal proceedings; whether [she] was represented by competent counsel and had the opportunity to confer with counsel about the options available to [her]; the

extent of advice from counsel and the court concerning the charges against [her]; and the reasons for [her] decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The post-conviction court noted that at the guilty plea hearing, the Petitioner stated that she was satisfied with the representation of counsel, that he had answered all of her questions, that she understood her guilty plea, and that she wanted to plead guilty. This court has previously stated that "[a] petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations 'carry a strong presumption of verity.'" Tina G. Strickland v. State, No. E2013-01118-CCA-R3-PC, 2014 WL 605442, at *5 (Tenn. Crim. App. at Knoxville, Feb. 14, 2014) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)), perm. to appeal denied, (Tenn. June 23, 2014).

Regarding the Petitioner's claim that her guilty plea was not knowing and voluntary, the post-conviction court essentially discredited the Petitioner's testimony that she suffered from a mental disease or defect that affected her competency and accredited trial counsel's testimony that he never saw anything that suggested competency issues. The post-conviction court noted that counsel advised the Petitioner of the strength of the State's case, the charges she faced, and the potential sentence. The court also found that the Petitioner knowingly and voluntarily pled guilty to avoid facing an additional conviction and sentence. Trial counsel testified that the Petitioner had known about the eight-year offer since November and had intended to accept the offer at that time. Regardless, the fact "[t]hat the petitioner would have liked more time to consider the offer . . . does not equate to a deprivation of the effective assistance of counsel." Trina Dawn Holdway Johnson v. State, No. E2011-00348-CCA-R3-PC, 2012 WL 134238, at *4 (Tenn. Crim. App. at Knoxville, Jan. 18, 2012). The Petitioner is not entitled to relief.

### III.  Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE